UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
|    ANNE NILANTHE RANASINGHE ) | Case No. 04-11396-SSM |
| ) | Chapter 13 |
|                   Debtor ) | |
| ) | |
| ANNE N. RANASINGHE, ) | |
| ) | |
|                Plaintiff ) | |
| ) | |
| vs. ) | Adversary Proceeding No. 05-1553 |
| ) | |
| CLAUDE T. COMPTON, ) | |
| ) | |
|              Defendant ) | |

**MEMORANDUM OPINION**

This matter is before the court on a motion by the defendant, attorney Claude T. Compton, to dismiss the debtor's complaint for failure to state a claim upon which relief can be granted. The is an action to recover damages arising from the alleged improper drafting and recording of three deeds. The dispositive issue is whether the debtor's claim—which has been pleaded under a variety of theories—is barred by the applicable statute of limitations. A hearing was held on February 7, 2006, at which both parties were represented by counsel. At the conclusion of the hearing, the court took the motion under advisement. For the reasons stated, the court concludes that the complaint must be dismissed because all of the claims are time-barred

Background

The plaintiff, Anne N. Ranasinghe ("the debtor") filed a voluntary petition under chapter 7 of the Bankruptcy Code in this court on March, 29, 2004. Among the assets listed on her schedules was a jointly-owned residence located in Manassas, Virginia, which the debtor claimed as exempt under § 522(b)(2)(B), Bankruptcy Code, as tenancy-by-the-entirety property.[1] The property is valued on the schedules at $380,000, subject to a deed of trust in the amount of $287,286.

The present action has its genesis in the chain of title to the property. The complaint alleges that when the debtor purchased the property in the summer of 2000, she engaged Mr. Compton to serve as the settlement attorney and to prepare the deed. Although the loan for the house was being taken out solely in the debtor's name, the debtor says that she instructed Mr. Compton that the deed should convey title to both herself and her husband as tenants by the entireties.[2] The original deed, however, conveyed the property only to the debtor. The complaint further alleges that Mr. Compton subsequently prepared a deed of gift that was

---

[1] Former § 522(b)(2)(B), Bankruptcy Code—now § 522(b)(3)(B)—allows an individual debtor to exempt:

> [A]ny interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable non-bankruptcy law.

In Virginia, real property held as tenants by the entireties is not liable for the debts of either spouse alone but can only be reached for their joint debts. *Vasilon v. Vasilon*, 192 Va. 735, 66 S.E.2d 599 (1951).

[2] The defendant disputes that plaintiff instructed him to prepare the original deed to both herself and her husband; however, on a motion to dismiss for failure to state a claim for relief, the court is required to accept all well-pleaded facts as true.

signed on January 4, 2001, conveying the property from the debtor to herself and her husband. That deed, however, did not describe the grantees as tenants by the entirety, nor did it contain language reflecting survivorship. Mr. Compton then re-recorded the deed of gift on February 11, 2002, after inserting language that would create a tenancy by the entireties. He did not, however, have either the debtor or her husband execute the "corrected" deed.

On August 16, 2004, the chapter 7 trustee commenced an adversary proceeding to set aside the deeds of gift as either a fraudulent or voluntary conveyance. *King v. Ranasinghe*, A.P. No. 04-1249-SSM. In an order granting partial summary judgment on February 16, 2005, this court ruled that the re-recording of the deed on February 11, 2002, was without legal effect because the debtor and her husband did not execute the instrument after it had been materially altered. As a result, the court ruled that the deed of gift (as originally recorded) vested title to the property in the debtor and her husband as tenants in common, with the result that the trustee had, at the very least, the right to sell the debtor's undivided one-half interest for the benefit of the bankruptcy estate. Before trial could be had on the remaining fraudulent conveyance claims, the debtor converted her case from chapter 7 to chapter 13. A plan was ultimately confirmed that provided for a 100-percent payment of allowed unsecured claims.[3]

---

[3] The total payments the debtor must make under her plan is $80,000. The trustee reports that the allowed unsecured claims total $65,512.16, exclusive of administrative expenses. The debtor recently filed—and the court granted—a motion by the debtor for authority to refinance the property in order to pay off the plan.

3

The debtor then commenced this adversary proceeding against Mr. Compton on November 17, 2005.   The complaint is pleaded in six counts: legal malpractice (Count I); breach of contract (Count II); breach of implied warranty (Count III); breach of express warranty (Count IV); fraud (Count V); and negligence (Count VI).   All six counts are predicated on the defendant's alleged failure to properly draft and record the deeds to the property.

<u>Discussion</u>

I.

This court has subject matter jurisdiction under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984.  The complaint alleges that this action is a core proceeding under 28 U.S.C. § 157(b).  A "core" proceeding, however, is one that either arises under the Bankruptcy Code[4] or arises in a bankruptcy case.[5]   An action against a party who is not a creditor to recover damages owed to a debtor for a prepetition tort or prepetition breach of contract neither arises under the Bankruptcy Code, nor does it "arise in" the bankruptcy case in the sense that it "would have no existence outside of the bankruptcy." *Bergstrom,* 86 F.3d.

---

[4] A proceeding "arises under" the Bankruptcy Code if federal bankruptcy law creates the cause of action or if the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal bankruptcy law.  *Poplar Run Five Ltd. P'ship v. Virginia Elec. & Power Co. (In re Poplar Run Five Ltd. P'ship)*, 192 B.R. 848, 855 (Bankr. E.D. Va. 1995).

[5] Proceedings "arising in" a bankruptcy case are those that "are not based on any right expressly created by [the Bankruptcy Code], but nevertheless, would have no existence outside of the bankruptcy." *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.)*, 86 F.3d 364, 372 (4th Cir. 1996) (quoting *Wood v. Wood (Matter of Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).

at 372.[6] At best, the pleaded causes of action are "related to" the bankruptcy case, in that a recovery may provide funds that could be used to pay creditors. *See Humbold Express, Inc. v. The Wise Co., Inc. (In re Apex Express Corp.)*, 190 F.3d 624 (4th Cir. 1999) (debtor's action to collect prepetition accounts receivable from a non-creditor customer is non-core related proceeding). Nevertheless, a related claim is by definition non-core. Although this court has jurisdiction to try non-core related claims, a bankruptcy judge may not enter a final judgment or order in a non-core matter except with the consent of the parties. 28 U.S.C. § 157(c). Absent such consent, the bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court, with any judgment or other dispositive order being signed by a United States district judge. *Id.* Where, as here, neither party has objected to this court's entry of a dispositive order, they have impliedly consented to the court's power to decide this case. *See McLean Square Assocs. v J. W. Fortune, Inc. (In re McLean Square Assocs.),* 200 B.R. 128, 133–34 (E.D. Va. 1996), *aff'd* 107 F.3d 866 (4th Cir. 1997). Accordingly, this court has jurisdiction to rule on the motion to dismiss.

II.

The threshold issue before the court is whether the claims are barred by the applicable statute of limitations. The answer to this question requires consideration of two points. The first is whether the debtor can escape the bar of the statute by artful pleading, The second is whether she can take advantage of the two-year extension provided by Section 108 of the Bankruptcy Code.

---

[6] By contrast, an action against a debtor's bankruptcy attorney for malpractice committed *during* the case does "arise in" the bankruptcy case for jurisdictional purposes. *Grausz v. Englander*, 321 F.3d 467 (4th Cir. 2003).

A.

All of the pleaded causes of action relate to professional legal services that Mr. Compton provided to the debtor.  The last such service—the recording of the defective "corrected" deed—took place on February 11, 2002.  The complaint in this action was filed more than three years later on November 17, 2005.  In Virginia, there is a three-year statute of limitations for breach of contract of oral or implied contracts.  Va. Code Ann. § 8.01-246.  This statute of limitations also applies to actions for legal malpractice in the absence of a written retainer agreement. *Shipman v. Kruck,* 267 Va. 495, 501, 593 S.E.2d 319, 322 (2004)*; MacLellan v. Throckmorton*, 235 Va. 341, 343, 367 S.E.2d 720, 721 (1988).

In addition, in Virginia the right of action for a breach of contract accrues, and the prescribed limitation period begins to run, when the breach of contract occurs and not when the resulting damage is discovered.  Va. Code. Ann. § 8.01-230.  Virginia courts adhere to this principle even though this may "result in inequities by triggering a statute of limitations when the injury or damage is unknown or difficult or even incapable of discovery." *Shipman* 267 Va. at 503, 593 S.E.2d at 323.  For legal malpractice claims in particular, Virginia courts hold that "when malpractice is claimed to have occurred during the representation of a client by an attorney with respect to a particular undertaking or transaction, the breach of contract or duty occurs and the statute of limitations begins to run when the attorney's services rendered in connection with that particular undertaking or transaction have terminated . . . ." *Keller v. Denny*, 232 Va. 512, 518, 352 S.E.2d 327, 329 (1987).  In this case, therefore, the statute of limitations began to run on February 11, 2002, for all claims sounding in breach of contract, regardless of when the debtor discovered the breach.

B.

In addition to the breach of contract claims, the debtor asserts both negligence and fraud. However, in Virginia, "an action for the negligence of an attorney in the performance of professional services, while sounding in tort, is an action for breach of contract and thus governed by the statute of limitations applicable in contracts." *Oleyar v. Kerr*, 217 Va. 88, 90, 225 S.E.2d 398, 400 (1976). Therefore, the claim of negligence does not extend the time limitation on filing the complaint beyond the three-year limit imposed by the breach of contract claim.

The Supreme Court of Virginia has not specifically addressed whether a client's claim against her attorney for actual fraud is subject to the statute of limitations for breach of contract. Although an even shorter two-year statute of limitations applies for fraud, Va. Code. Ann. § 8.01-243, the limitation period for fraud is subject to a discovery rule. Specifically, the statute begins to run at the time the fraud is discovered or when, by the exercise of due diligence, it ought to have been discovered. Va. Code Ann. § 8.01-249. *See also Gilmore v. Basic Indus., Inc.,* 233 Va. 485, 357 S.E.2d 514 (1987). The use of a discovery rule in this case could potentially extend the date of accrual of the debtor's claim, postponing the start of the two-year time. Postponing the accrual date in this case to any point after November 17, 2003, would cure the timeliness problem.[7] However, in order to take advantage of this discovery rule, the plaintiff must allege sufficient grounds to support a cause of action for actual fraud independent of her malpractice claim.

---

[7] Such date might, for example, be as late as August 16, 2004, when the chapter 7 trustee commenced his fraudulent conveyance action, or even February 16, 2005, when this court granted the trustee's motion for partial summary judgment.

Virginia courts have acknowledged that a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty arising out of the same events. *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998). However, in order to sustain a tortious breach of duty, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Foreign Mission Bd. V. Wade,* 242 Va. 234, 241 (1991) (citing *Spence v. Norfolk & W.R.R. Co.*, 92 Va. 102, 116, 22 S.E. 815, 818 (1895)).

In the present case, any duty to perform legal transactions with the required degree of care and skill arose from the parties' attorney-client relationship and a breach of that duty would simply be a breach of the implied terms of the contract. *Oleyar*, 217 Va. at 90, 225 S.E.2d at 400; *Gregory v. Hawkins*, 251 Va. 471, 475 (1996). Whether an attorney's breach of a duty not to falsely misrepresent his or her qualifications or to falsely misrepresent what actions were performed for a client can be considered a tort independent of the contract for legal services is an issue the Supreme Court of Virginia has not specifically addressed. In principle, however, the court can see no reason why actual fraud perpetrated by an attorney on a client should not be independently actionable. In other contexts, a claim for actual fraud arising out of a contractual relationship can be based on fraud in the inducement. *Richmond Metro. Auth.*, 256 Va. at 559–60, 507 S.E.2d 547–48; *Colonial Ford Truck Sales Inc. v. Schneider,* 228 Va. 671, 677, 325 S.E.2d 91, 94 (1985). In order to state a cause of action for fraud in the inducement of a contract, a party must allege that the misrepresentations were "positive statements of fact, made for the purpose of procuring the contract; that they are untrue; that they are material; and that the party to whom they were

made relied upon them, and was induced by them to enter into the contract." *Brame v. Guarantee Fin. Co., Inc.*, 139 Va. 394, 408, 124 S.E. 477, 481 (1924).

The complaint in this case alleges that Mr. Compton's action of holding himself out as an experienced attorney and expert in real estate transactions was a material representation relied upon by the debtor. However, even if Mr. Compton made such a representation, a generalized claim of competence to undertake services for a client would constitute mere puffery and would be insufficient to support an action for fraud in the inducement. *See In re Cable & Wireless, PLC, Securities Litigation,* 321 F. Supp. 2d 749, 767 (E.D. Va. 2004) (explaining that in Virginia "commercial puffery lacks, as a matter of law, the materiality to be actionable."). The situation might be different if the alleged misrepresentation involved specific objective facts—for example, if an attorney who had been admitted to the bar for only 6 months and had never drafted a deed were to falsely assure the client that he handled hundreds of transactions similar to the client's. No such specific misrepresentation is alleged in this case, however. Accordingly, the court concludes that the fraud count, at least as presently pleaded, fails to allege a cause of action independent of the underlying malpractice claim.

C.

For the reasons stated, the court concludes that the statute of limitations applicable to the debtor's claim—regardless of how it is pleaded—was three years beginning on February 11, 2002. Accordingly, in the absence of some applicable tolling provision, the complaint was time-barred when it was filed some three and a half years later on November 17, 2005.

9

III.

The debtor argues that section 108 of the Bankruptcy Code, is just such a tolling provision. In relevant part, it provides as follows:

> (a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of —
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) two years after the order for relief.

§ 108(a), Bankruptcy Code. Section 108(a) protects the bankruptcy estate by providing the trustee at least two years in which to bring any cause of action belonging to the debtor as long as the limitation period had not already run on the date of the order for relief, which in a voluntary bankruptcy case is the date the petition is filed. § 301(b), Bankruptcy Code. The debtor in this case filed her chapter 7 petition on March 29, 2004, and converted the case to chapter 13 on April 22, 2005. Although conversion of a case constitutes an order for relief under the new chapter, it does not—with certain exceptions not applicable here—change the date of the order for relief. § 348(a), Bankruptcy Code. Thus the date of the order for relief, for the purpose of Section 108(a), remains March 29, 2004, the date the chapter 7 petition was filed. Since the statute of limitations for an attorney malpractice claim had not yet run on March 29, 2004, a two-year extension from that date would render the present action timely. The question before the court, however, is whether the benefit of the two-year extension can be claimed by a chapter 13 debtor, since Section 108(a) states that the extension applies to "the trustee."

10

A.

In a typical chapter 11 case, no trustee is appointed, and the debtor, in its capacity as debtor in possession, is clearly entitled to the benefit of the extension. The reason is that § 1107(b), Bankruptcy Code, expressly grants a chapter 11 debtor in possession all the rights and powers (except for the right to compensation) of a trustee. 2 Collier on Bankruptcy, ¶ 108.02[3], p. 108-6 (Alan N. Resnick & Henry J. Sommer eds., 15th ed., 2005). A similar provision applies in a chapter 12 family farmer case. § 1203, Bankruptcy Code. By contrast, in a chapter 7 case or when a trustee is serving in a chapter 11 case, only the trustee and not the debtor receives the benefit of the § 108(a) extension. *Craig v. Barclay American Finance, Inc. (In re Craig),* 7 B.R. 864 (Bankr. E.D. Tenn. 1980).

B.

In chapter 13, a different situation is presented. Unlike a chapter 11 or chapter 7 trustee, the chapter 13 trustee functions primarily, although not exclusively, as a paying agent, and the debtor retains many of the powers that a trustee would have in chapter 7. However, unlike the chapter 11 or chapter 12 debtor in possession, the Bankruptcy Code does not broadly confer upon the chapter 13 debtor all the rights and powers of the trustee. Instead, the Bankruptcy Code provides a more limited grant of power:

> Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l) of this title.

§ 1303, Bankruptcy Code. Additionally, a debtor who is "engaged in business," in the sense of being self-employed and incurring trade credit in the production of income from such employment, is granted the rights and powers of a trustee under § 363(c) and § 364. § 1304,

Bankruptcy Code. Conspicuously missing from either §§ 1303 or 1304 is any reference to § 108.

This court has found only two published cases and one unpublished case considering this question, with the two published cases favoring application of the extension to a chapter 13 debtor, and the unpublished decision going the other way. The commentators are also divided. *Compare* 16 William L. Norton, Norton Bankruptcy Law and Practice 2d 3 (2002) ("Since a Chapter 13 debtor is not a trustee and is not given the powers of a trustee, the extensions under Code section 108 should not apply to such a debtor even though the action may be beneficial to the estate."), *with* 2 Collier on Bankruptcy, ¶ 108.02[3], p. 108-6 (Alan N. Resnick & Henry J. Sommer eds., 15th ed., 2005) ("Section 108 should be applicable to a chapter 13 debtor, who is entitled to remain in possession of all property of the estate and thus retains the right to any cause of action which would otherwise pass to a trustee.").

C.

The broadest holding favoring the debtor's position is that espoused in *Thomas v. GMAC Residential Funding Corp.* (*In re Thomas*), 309 B.R. 453 (D. Md. 2004). There, the court faced the issue of whether a related subsection within Section 108 extended the time for a chapter 13 debtor to provide notice of rescission under the Truth in Lending Act. The subsection in question—§ 108(b)—provides a 60-day extension for "the trustee" to perform certain acts if the period had not expired prior to the bankruptcy filing. The court concluded that the extension should also apply to the chapter 13 debtor but offered a curious explanation for its position. The court reasoned that "[a]lthough § 108 refers only to the trustee, it is generally accepted that debtors in possession enjoy the same privilege." *Id.* at

456. Without citing any authority for the proposition, *Thomas* then silently assumes that a chapter 13 debtor is a "debtor in possession," and concludes that since § 108 applies to both trustees and debtors in possession, it applies also to an individual chapter 13 debtor.

This view is completely unsupported by the Bankruptcy Code and precedent. First, the term "debtor in possession" appears only in chapter 11 and chapter 12 of the Bankruptcy Code.[8] The sole definition of the term is set forth in chapter 11, although there is a sort of definition by context in chapter 12. Importantly, the term "debtor in possession" nowhere appears in chapter 13. By simple logic, therefore, since the term "debtor in possession" is only used in the context of chapter 11 and 12, it follows that a debtor in possession only exists in the context of those chapters and not chapter 13.

Secondly, in support of its conclusion that it is generally accepted that chapter 13 debtors are debtors in possession, the *Thomas* court cites to *In re Froehle*, 286 B.R. 94, 199 n.3 (8th Cir. BAP 2002). This reliance is misplaced. The actual issue in *Froehle* was whether the automatic stay tolled the statutory period for a chapter 13 debtor to redeem her home from a tax sale. In the portion of the *Froehle* opinion cited by *Thomas*, the court was explaining that § 108 was the sole tolling provision found in the Bankruptcy Code and that it applied to a debtor in possession. Nowhere did the *Froehle* court explicitly or implicitly take the broader step of finding that a chapter 13 debtor was a debtor in possession. In fact, the *Froehle* court's excursus concerned another case, *Johnson v. First Nat'l Bank of Montevideo* (*In re Johnson*), 719 F.2d 270 (8th Cir. 1983), which applied § 108 in a chapter 11 case. For

---

[8] Chapter 9 ("Adjustment of Debts of a Municipality") does not use the term "debtor in possession" but does define "trustee" for most purposes as meaning the debtor. § 902(5), Bankruptcy Code.

13

its part, the *Johnson* court relied on two cases, *In re Interstate Restaurant Systems, Inc.*, 26 B.R. 298, 301 (Bankr. S.D. Fla. 1982) and *In re Santa Fe Development Etc.*, 16 B.R.165, 167 n.1 (B.A.P. 9th Cir. 1981), both of which likewise involved tolling issues in chapter 11 cases. Accordingly, there is no support in either the case law or the Bankruptcy Code itself for the position that chapter 13 debtors are debtors in possession.

D.

A somewhat different analysis was employed by a Tennessee bankruptcy court in *In re Gaskins*, 98 B.R. 328 (Bankr. E.D. Tenn. 1989); *see also* Collier, *supra*, at ¶ 108.02[3], p. 108-6. In essence, *Gaskins* reasoned that § 108 should extend to a chapter 13 debtor so long as the estate would benefit. In concluding that a chapter 13 debtor's fraud claim against a home improvement contractor was preserved by § 108, the *Gaskins* court acknowledged that § 108(a) specifically extends the time for the bankruptcy trustee to bring causes of action, not the debtor. *Id.* at 330. However, the Court found that in cases where the estate would benefit from prosecution of the action, the debtor should be allowed the benefits of § 108(a). *Id.* Such a benefit would exist where the debtor's suit would potentially eliminate or reduce claims against the estate or change the claim from a secured to an unsecured one, thereby augmenting the estate to the benefit of creditors, or even if it simply "may change the way the chapter 13 plan may deal with a particular claim." *See id.* at 331.

There is a significant distinction between the present case and *Gaskins* in that the defendant contractor in *Gaskins* was a creditor that apparently deliberately chose not to file a proof of claim and whose claim was secured by a mortgage against the debtor's home. The defendant here is not a creditor and has no lien against the debtor's property. But even

putting that difference aside, the policy-based approach taken in *Gaskins* does considerable violence to the statutory language. In this court's view, it is an insufficient reason to allow a chapter 13 debtor to avail himself or herself of the benefit of § 108 simply because there is a benefit to the estate. It is true that one of the policy goals of bankruptcy law is to preserve and marshal the debtor's assets so as to maximize the return to creditors. Such policy concerns, however, cannot override specific language in the Bankruptcy Code. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (holding that administrative creditor had no independent standing to seek surcharge of a secured creditor's collateral under § 506(c) when the statute mentioned only the trustee).

E.

In the interest of full disclosure, the court acknowledges issuing an unpublished opinion some years ago holding that the § 108(a) extension did apply to a chapter 13 debtor. *Spence v. Advanta Mort. Corp. (In re Spence),* No. 97-19586-SSM, A.P. No. 98-1221 (Bankr. E.D. Va., May 24, 1999) at 10-12, *available at* http://www.vaeb.uscourts.gov/opinions/ssm/spence.pdf. In that opinion, the court noted that § 363(b)—a source of authority explicitly provided to the chapter 13 debtor by way of § 1303—gives the chapter 13 debtor the right to "*use*, sell or lease ... property of the estate." (Emphasis added); *cf.* Collier, *supra*, at ¶ 108.02[3], p. 108-6 . Property of the estate includes causes of action owned by the debtor on the filing date. *Tignor v. Parkinson*, 729 F.2d 977, 981 (4th Cir. 1984). Since the only way to "use" a cause of action is to bring suit on it, the opinion concluded that a chapter 13 debtor must have the same power that a trustee

would have to bring suit, which would logically include the extension of time under § 108(a) to do so.

Upon further reflection, however, this court concludes that the analysis in *Spence*, while it has a superficial appeal, cannot be squared with the plain language of the statute or with one of the basic rules of statutory interpretation—namely the rule of implied negation. Application of the rule results in the following simple syllogism: § 1303 explicitly enumerates specific "trustee" powers that a chapter 13 debtor has; powers not listed are implicitly negated; § 108(a) is not a listed power under § 1303; its application is, therefore, negated. Said differently, since § 108(a) is not a specific trustee power of a trustee given to a chapter 13 debtor, and absent a provision allowing a chapter 13 debtor to generally exercise the rights and powers of a trustee (as exists in chapter 11 when a trustee has not been appointed), a chapter 13 debtor does not receive the benefit of the § 108(a) extension. *In re Bowen,* 2004 Bankr. LEXIS 356, *19-25 (Bankr. N.D. Tex., March 29, 2004); 16 William L. Norton, Norton Bankruptcy Law and Practice 2d 16:3 (2002).

This analysis, moreover, comports with the stated policy behind § 108—allowing the trustee additional time "to discover and evaluate potential causes of action after stepping into the shoes of the debtor." *Bowen,* 2004 Bankr. LEXIS at 20. *See also Independent Fire Ins. Co. v. Pender*, 948 F.2d 985, 987 (5th Cir. 1991) (citing H. Rep. No. 595, 95th Cong., 1st Sess. 318, reprinted in 1978 U.S. Code Cong. & Admin. News 5963, 6275; S. Rep. No. 989, 95th Cong., 2d Sess. 30 (1978), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5816). While a trustee might need additional time to get a handle on the debtor's affairs and to investigate whether the debtor might have meritorious claims, a debtor's own knowledge of whether he or

16

she has such claims is unaffected by the bankruptcy filing. But even if that rationale were not particularly compelling—after all, a chapter 11 debtor in possession would have the same knowledge as a chapter 13 debtor of its own causes of action but nevertheless gets the benefit of the two-year extension—the Supreme Court's jurisprudence makes it clear that the Bankruptcy Code must be interpreted according to its plain textual meaning and that "[a]chieving a better [bankruptcy] policy outcome ... is a task for Congress, not the courts." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. at 13-14. *See also Stangel v. United States,* 219 F.3d 498, 501 (5th Cir. 2000) (holding that a chapter 13 debtor could not utilize the trustee's strong arm powers under § 545 on grounds that the literal language of the statute prevailed over policy considerations).

Accordingly, although the three-year statute of limitations for the malpractice claims had not run at the time the debtor filed her bankruptcy petition, she is not entitled to the benefit of the two-year extension a trustee would have under § 108(a). The present action having been brought more than three years after the claim accrued, the complaint must be dismissed.

IV.

Although the motion to dismiss primarily relies on the statute of limitations, the defendant also argues that the complaint must be dismissed because the debtor fails to allege any recoverable damages. Since the debtor's claims are time-barred in any event, the court need not reach that issue. Some brief comment may nevertheless be appropriate. The defendant argues that because the debtor did not lose her house, she experienced no compensable loss. The court cannot agree. The debtor plainly alleged in her complaint that if the deed to her property had been properly drafted and recorded, she could have retained the property in her chapter 7 case.

17

Instead, in order to keep the property, she was forced to convert her case to chapter 13 and to pay claims she would not have been required to pay under chapter 7. In effect, she was forced to buy back her property from her creditors. The $80,000 in payments she is making under her chapter 13 plan in order to prevent the chapter 7 trustee from selling the property plainly constitutes a measurable loss sufficient to support a cause of action for legal malpractice. *See, e.g., Shipman*, 267 Va. at 504, 593 S.E.2d at 323–24 (stating that even the filing fee for bankruptcy itself is a recoverable damage.).

## Conclusion

Even though the debtor may be able to show measurable damages, her claims are barred by the applicable statute of limitations. For that reason, the defendant's motion to dismiss for failure to state a claim for relief must be granted. A separate order will be entered consistent with this opinion.

Date: _____     _____
                                  Stephen S. Mitchell
Alexandria, Virginia              United States Bankruptcy Judge

Copies to:

William R. Voltz, Esquire
2120 L Street, N.W.
Suite 700
Washington, DC  20037
Counsel for the plaintiff

Brice B. Henderson, Esquire
Law of Brice B. Henderson
1201 North Powhatan St.
Arlington, VA 22205
Local counsel for the plaintiff

David D. Hudgins, Esquire
Hudgins Law Firm
515 King Street, Suite 400
Alexandria, VA 22314
Counsel for the defendant

Gerald M. O'Donnell, Esquire
211 North Union St., Suite 240
Alexandria, VA  22314
Chapter 13 trustee